Case number four for argument today is United States v. Brown Mr. Hillis. May it please the court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Frankie Brown on this appeal. He raises two issues. The first is the reliance by the district court on incorrect information to impose sentence in violation of Mr. Brown's Fifth Amendment rights due process. There's long established case law about the reliance on such evidence making for an invalid sentencing proceeding and that's what we have here. We've cited those cases in the brief and in particular we are concerned with, as it relates to this issue, the judge's reliance on the conclusion that there are nine administrative conditions that are required whenever there's imposition of supervised release. Of course, the statute doesn't have nine administrative conditions. You don't find those at 3563B. You don't find them referenced in 3583D. You don't find them in the guidelines. What do we make, Mr. Hillis, or what are we to make, if anything, in your view of the fact that Mr. Brown here waived the reading, signed the waiver, etc., etc.? Sure. I think it's an invalid waiver for the reasons we've outlined in the brief and I'll cover them briefly here. But we've got a tainted process to begin with because when the waiver form says the conditions are necessities and the PSR says these are requirements, one would be led to believe that you cannot challenge these things. They are, in fact, mandatory. So that is the first problem that is tainting the government's waiver argument, that you've got this information that is explicitly in the court's record in the PSR. When that's in the PSR, though, Mr. Brown had counsel. Can't he say, when the district judge says, does anybody have any issues with the PSR, he say, we actually do. These nine aren't mandatory and he'd like to challenge number four or what have you. Right. Sure. Except the PSR said that they were mandatory. I'm not certain the counsel took any additional steps. The court treated them as mandatory. The counsel would be right, but he would be the odd man out in that view. As a matter of fact, it dates back to Post-Thompson, 2015. In February, we cited in the 28J letter where the judges from the Southern District got together and said these are all requirements of supervised release. So the judges themselves, Post-Thompson, rebranded conditions that were once standard conditions of supervised release all discretionary to say they are now requirements, they are administrative, they are to be imposed in every case. But judge, beyond that, we've got problems under the Gamilla line of cases the government cites. We have cases that go before and after Gamilla, such as Kappus and Ross in particular, that say that the failure to challenge supervised release conditions is not a waiver, it's silence that results in plain error review. And so I think the consent form is invalid. I think it's of no moment, and there's not a valid Garcia-Segura analysis such that the government can rely on it to demonstrate waiver either, Judge Scudder. So I think for these reasons, we shouldn't rely on the government's waiver argument. Plus, it's inconsistent with the Zerps case from the Supreme Court, another case law that says waiver is supposed to be a knowing and voluntary relinquishment of a known right. And I don't see that here, that this was anything other than a miss by everybody. And it's been indulged by the judge through the probation office by saying that conditions are requirements when they are in fact not. So if there are no further questions on waiver, I'll move to the merits. I've mostly hinted at them already. The statute doesn't have these nine conditions. Thompson doesn't have these nine conditions. So the government says that these are verbatim from this court's case law and cites Thompson. Thompson discusses four supervised release conditions that it calls administrative and says that no explanation need be given for them. That's a far cry from saying these are requirements in every case for their supervised release. And I'm not great at math, but I know that four is a different number than nine. So that's another problem with that assertion that the government makes in relation to Thompson. So for these reasons, we think that the government cannot prevail on its waiver argument. And the district court has indeed relied on incorrect information that is at the expense of my client's Fifth Amendment due process protections, resulted in the imposition of an incorrect sentence by relying on incorrect information. So if there are no further questions, I will address briefly the plain error factors here. If the nine administrative conditions don't exist, that's error, that's plain. And we cited to the Schrode and Pruden cases. Schrode is a Seventh Circuit case. It talks about improper delegation of a supervised release condition, and it says that essentially an unlawful condition satisfies plain error because it puts a defendant at risk of reincarceration under 3583E3 through revocation and re-imprisonment under the preponderance of evidence standard. So those four plain error factors, I think, are established here. In this case, Schrode looked at one factor. We have nine, or not one condition. We have nine. So certainly the substantial rights are more at issue here. They've been affected more dramatically here to the power of nine. With that said, the second issue in the case is that the judge procedurally erred by inadequately explaining the extent of the downward variance. He felt cabined by the career offender range, and he did not consider mitigating factors such as Mr. Brown's age, as well as the judge substantively erred by overemphasizing a particular 3553A factor, and that is deterrence. So if I may begin with the extent of the downward variance, the judge said that if Mr. Brown weren't a career offender, he wouldn't give him 10 years. So the judge seemed to regard 10 years as sort of a floor, an informal one perhaps, I don't know. But Korner says, and Kimbrough, of course, the judge is free to disregard the career offender provisions, or any provisions actually, under Kimbrough if they are not adequately established through the commission's institutional position, through the research it does, et cetera. And the career offender is particularly discussed in the Korner case. On this particular point you're raising, Mr. Hills, what's our standard of review? For the career offender, he challenged the length of the sentence, so I think that he is. Yeah, but he's not arguing that he's not a career offender, right? He's just arguing that the district judge here remained too tethered to that. That's right, but he didn't have an opportunity to contest that. I think that it should be de novo, but even if it is plain error, judge, it would be, again, an incorrect view of the law that he felt cabined, the judge felt cabined by the limited discretion that he thought was at hand due to the career offender provision. So I think that under either standard of review we'd be able under this record to establish a basis for relief. But I will say specifically he did argue about age, his health is mentioned. We know about Polk and Presley cases that talk about aging out of recidivism. The judge didn't consider those things, didn't consider Mr. Brown's health. Mr. Brown specifically in his allegation. But we don't know that he didn't consider them. I mean, he went below the guidelines. He did. But, Judge Keeney, he did that only with respect to a career offender argument, not calculating or taking into account, rather, the impact of the other individuals. Yes, he did mention a career offender anyway. He did. He did mention a career offender. But the other factors aren't accounted for, and so I think that is showing in the record that they weren't accounted for, they weren't considered. Aging out is a well-known thing. We don't need a sentence of this type. But also, the government, by not discussing the overemphasis on a mitigating factor, excuse me, rather, not discussing the overemphasis on a 3553A factor, that's important here. The government's talked a lot about waiver, and now we want to talk about waiver. Because under Repking and under Caveira, those are Seventh Circuit and Second Circuit cases, this is a valid analysis, and the judge missed this. The government didn't account for it in its brief. We think that the government has a waiver problem now. So for these different reasons, procedural error and substantive error, we ask that this court vacate and remand. I reserve the balance of my time for rebuttal. Thank you. Mr. Hillis. Mr. Wiseman. May it please the Court. My name is Derek Wiseman, and I am here today on behalf of the United States of America. This Court, in today's case, should affirm the sentence imposed by the disreport below for several different reasons. First, because Mr. Brown waived his current objection to the pre-sentence investigation report's description of administrative supervised release conditions. The record shows that Mr. Brown was given more than enough notice, had ample opportunity to bring this PSR objection in the disreport below. The record further tells us that Mr. Brown analyzed this now-disputed PSR provision with his counsel, that he understood this provision, and that he chose not to object to it. Instead, Mr. Brown affirmatively agreed to be bound by all of the supervised release conditions that are described in this now-contested PSR provision that was challenged for the very first time on appeal. That is a waiver under this Court's jurisprudence, and this argument is not properly before this Court. But even if waiver did not apply in this case, Mr. Brown still cannot establish plain error and prejudice on this issue. Starting with plain error, the district court's imposition of administrative supervised release conditions in this case is certainly not a plain error. And on this point, it's very important to be very precise and clear about what exactly Mr. Brown argued in his opening brief on this case. Mr. Brown did not argue in that brief, and specifically on pages 12 through 18 of that brief containing this section. He did not argue that only some of these administrative supervised release conditions properly qualified as administrative conditions. He did not attack the explanations or justifications for these conditions, nor did he challenge the substance of these conditions. In his opening brief in this case, Mr. Brown argued only that the PSR incorrectly stated, and that the district court therefore incorrectly believed, that administrative supervised release conditions were mandated by law. That's the argument that's before this Court today, assuming waiver does not apply. And when we look to that argument, the record ultimately tells us otherwise. We know from the record that this PSR provision was pulled directly and almost verbatim from this Court's very own decision in United States v. Thompson, specifically at page 378 of this Court's decision in United States v. Thompson. And in that very same decision— I hope our opinion wasn't that long. That's correct, Your Honor. We must be citing the federal reporter. Exactly, Your Honor. That's the pence. Because I think it is important to be clear on this, because this language does come directly from this Court. And in that very same opinion, this Court could not have been clearer in holding that administrative supervised release conditions are ultimately optional under the law. Both this Court's decision in Thompson and the PSR in this case clearly list and clearly categorize administrative supervised release conditions as separate and distinct from those mandatory supervised release conditions that are actually mandated by law. So it's clear that there's no plain error in this case, Your Honors. But even if there were, there is certainly no prejudice here. Mr. Brown has not and cannot show that but for his alleged error in this case, the district court would have rejected even one of these administrative supervised release conditions. Mr. Brown cannot show prejudice, and this Court should reject his argument for that reason alone. This Court should also reject Mr. Brown's second argument on appeal in this case, that the district court somehow misunderstood its sentencing authority. Once again, Mr. Brown has not and cannot show plain error on this issue, Your Honors. This is the issue that most concerns me, I'll tell you. In the sentencing transcript here, there's no question at the end of the day he got a below-guideline sentence. No doubt about it. But the district court says, just emphatically, I can state for the record if he were not a career offender, I would not sentence him to 10 years. And then similarly, three sentences later, if he were not a career offender, it would be something less. How is that not error under our decision in Korner? It's not error because, first off, Your Honor, this Court recognized in United States v. Redmond a presumption that a district court understands its sentencing authority. And in this case, what we have from that very sentence, Your Honor, which you've noted the only sentence that Mr. Brown points to in this sentencing transcript, that's at issue here, that's the sole evidence that we're talking about. And in that sentence, the district court merely recognized the obvious, recognized that, of course, Mr. Brown's sentence would have been lower had Mr. Brown not received a prior controlled substance offense conviction, resulting in an increased sentencing guideline range of up to 161 months of incarceration. I think that's the argument you have to make. It's just not what the transcript says. The transcript says, I can state for the record that if he were not a career offender, it has to be a reference to the guidelines determination. It's the only possible reference that is. I would not sentence him to 10 years. So what I worry about is that he felt the district court somehow felt tethered to it in a way that he could not exercise discretion to go, I don't know where, but somewhere below 120. So I think you could ultimately read that in one of two ways, Your Honor. You can read that in the way that Mr. Brown suggests in this case, that the district court in this case felt tethered to the sentencing guideline range, but you can certainly read that in a way that but for the district court's determination that this was a prior controlled substance offense conviction, but for the increase in the guidelines that was up to 161 months of incarceration, you can see from the thrust of the transcript in this case, Your Honor, that the district court was concerned about unwarranted sentencing disparities. If Mr. Brown was not a career offender, it certainly should have been lower according to the district court because that would have resulted in an unwarranted sentencing disparity with those similarly situated. So if we can read it in one or two ways, Your Honor, and as Your Honor noted earlier during opposing counsel's argument, the standard of review here is plain error. That's what this court held in United States v. Redmond. The error here certainly was not plain, especially if you can read this transcript in one or two ways. How long do you suppose Judge Reagan's been sentencing people? For quite some time, Judge Kenney. And he's been doing it so long. He's the chief judge. Not anymore. He was. That's accurate, Your Honor. He's not a judge anymore. That's accurate, Your Honor. As of a couple weeks ago, he's now retired. But he's been doing this for quite some time. He's been around. Certainly understands. Even prior to the sentencing guidelines, right? I believe that's correct, Your Honor. Certainly understands that the guidelines are advisory. Certainly understands this court's decision in United States v. Korner, which made that expressly clear, which was cited in the sentencing memorandums in this case. So I think that the judge's understanding of the sentencing guidelines was clear when you look at the full transcript and the full record in this case. This court should also reject Mr. Brown's third argument, though, on appeal. Mr. Brown also waived this argument that the district court somehow failed to mention a mitigating factor and consider a mitigating factor. This is waived because the district court properly followed this court's suggested procedure in United States v. Garcia-Seguro. At the outset of the sentencing in this case, the district court put Mr. Brown on express notice that if Mr. Brown wanted additional sentencing explanation in this case based on those section 3553A factors, he needed to ask for it. Otherwise, the district court would assume the sufficiency of its sentencing explanation. And then, at the end of the sentencing analysis by the district court in this case, the district court directly asked if Mr. Brown wanted that additional sentencing explanation of those section 3553A factors, and it was at that moment, Your Honors, that Mr. Brown, through his counsel, expressly refused to request the very additional explanation that he now demands for the first time on appeal. That is a waiver under this court's own precedent, specifically in United States v. Donnelly, in United States v. Dingell, and also, of course, in United States v. Garcia-Seguro. That argument has been waived, and it's not properly before this court. Fourth and finally, Your Honors, this court should affirm the sentence imposed by the district court below because it was substantively reasonable, and still is. The district court properly analyzed these section 3553A factors, properly weighed those factors, and reached a reasonable below guidelines sentence in this case. It's for that reason, Your Honors, and for all other reasons mentioned today, that we respectfully request that this court affirm the sentence imposed by the district court below. Thank you, Your Honor. Anything further, Mr. Hillis? Well, we respect length of tenure for judges. We can't adopt a rule that the longest tenure means that you are always correct. And so I don't think that we can import much from Judge Reagan's time on the bench to suggest that he couldn't make a mistake, Judge Kaney. Well, I understand that judges make mistakes, but there's also a fact that you do a job that's part of your job, a big part of your job. You're probably a little bit aware of what's required. True, true. But there are things that are on the books for 30 years that judges don't know. So the whole supervised release challenges is a good example. The law was what it was forever. We're more concerned about sentencing than we are entering judgment. So I'll talk for a moment about that. The government says that we can't show up under plain air at the time of sentencing, that there is a basis for relief. But look at Schrodinger. Schrodinger had one condition. The judge was wrong on it. That was a basis for relief. So we can't show prejudice. We have shown prejudice. The sole evidence, the government says, all we have is the judge's statement. I can't get better evidence than that. This is about the judge giving his reasons. So we don't need to look through the record evidence any further. What matters then, Judge Kaney, as you're suggesting, is what the judge says at sentencing. We've got it in black and white. Your opponent did give an alternative meaning to that statement. Sure. But is it a reasonable alternative? We should give the judge's statements their reasonable and natural purport. And here the reasonable reading is not the one the government gives. We should look just to what the language is. Judge Scudder read it once, if not twice, covering the necessary language. I don't think that the government gave an adequate explanation for an alternate reason. We looked at what the judge said, and here I think it supports our argument. So I have nothing further. Thank you. Thank you, Counsel. The case is taken under advisement. Thank you.